UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF CONNECTICUT

FILED

2005 OCT 17 A 9 29

U.S. ... ...

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No. |
| | : | 3:86-cv-252 (EBB) |
| STATE OF CONNECTICUT, et al., | : | |
| Defendants | : | |

**Special Master's Order on
Advocacy Review**

This order moves forward the master's compliance determination review and recommendations with regard to Court Requirements 73 and 74 on Advocacy. Defendants are required to submit written evidence demonstrating compliance. Also, Ms. Leslie Cohen is appointed to perform a review and submit a written report.

**The Remedial Plan Advocacy Requirements**

Remedial Plan Court Requirement 73, titled Advocacy, is one of the substantive requirements of the Plan and requires "full" compliance. The desired outcome is that "[a]ll residents who need an advocate will be identified and an advocate provided." CR 73 is not yet released from active judicial oversight.[1]

---

[1] The CR 73 requirement is:

> Identify STS residents who need advocates (priority to those on psychotropic medication and/or aversive programs, and those who are at risk of being victims of abuse who do not have active involvement by family member, guardian or friend) and secure advocacy for them.

All five of CR 73's Evaluation Criteria are still outstanding:

1. What is the criteria for needing an advocate?
2. Who are the residents based on that criterion needing an advocate?
3. Are advocates provided?
4. Are residents informed about and referred to self-advocacy opportunities based on defined referral criteria?

CR 74, titled "Advocacy by Office of Protection and Advocacy," is one of the instrumental, not substantive, Plan requirements. The desired outcome is "[a]n interagency agreement between P&A and STS defines advocacy roles and principles." That agreement must be implemented by both STS and the P&A.[2]

**Advocate Status**

Advocacy is a very important element of the needs/services discussed at each STS resident's annual Overall Plan of Service meeting. The Interdisciplinary Team makes recommendations regarding advocacy. Advocacy is also a right under the Remedial Plan and, when one considers the cognitive and expressive limits on most STS residents' ability to speak and advocate for themselves, the inclusion of this right in the Remedial Plan is unsurprising. Many STS clients have family, guardian or friends who can and do provide advocacy. However, given the age of STS clients and those closest to them, many need outside advocacy.

With this lawsuit moving toward the last few compliance determination recommendations, it is also noted that Advocacy will continue to be an important safeguard for STS residents after the end of the Court's active judicial oversight.

As of June 30, 2005, Defendants report that they have found that 147 of the 572 residents have an advocate who is not a parent or guardian; none of the remainder, Defendants report, need an advocate and are without one. Defendants' Quarterly Compliance Report, CR 73-74 (July 2005). Defendants report that advocacy is provided by either the Connecticut Office of Protection and Advocacy (OPA) through its advocates or its

---

5. Is the client's advocacy need discussed at the OPS?

[2] The CR 74 requirement is:

> Develop and implement Interagency Agreement(s) with Office of Protection & Advocacy to define roles of advocacy staff assigned to STS, and in said agreement(s), state principles of advocacy.

EC 2 of CR 74 remains outstanding:

2. Is the agreement implemented?

contractor WeCAHR, the STS Foundation, or a category called "personal," understood to mean the person is his or her own advocate.

**Background**

It had been contemplated early in this post-contempt period that the master would review compliance with CR 73 and 74 without an appointed reviewer, as he has done for other requirements which were not likely to, or did not, result in disputed fact finding. In 2001, the OPA alleged interference by STS with OPA's advocacy responsibilities and, by order of February 26, 2002, the Special Master ordered the OPA to submit specific information on its allegations, in the context of Defendants' intention to submit an advocacy plan. Dkt. 704.

On their requests, Defendants were granted extensions of time to submit an advocacy plan.[3] On July 8, 2002, Defendants and OPA provided the "final version" of <u>Advocacy and the Role of the Office of Protection and Advocacy at the Southbury Training School and for STS Residents: DMR/PA Joint Statement of Operating Principles</u> (July 8, 2002). Although "final," it was not complete.  By its terms, other undeveloped documents needed to be added:

- This statement of principles concluded with a provision that it "requires the explication of relevant procedures" and that DMR and OPA "intend to provide such explication as an Addendum to this statement." (p. 4).

- Interdisciplinary Team Guidelines for assessment of advocacy needs were to be "further developed jointly by STS and OPA."(p. 2).

- STS staff training, and other implementation actions, were not addressed.

The Special Master analyzed the July 8 submission in detail and set deadlines for completion of the work. Special Master's Orders of July 12 and 16, 2002. Compliance review was put in abeyance pending resolution of the pending issues. <u>Id.</u>

---

[3]  Defendants' Motion for Extension of Time to Submit an Advocacy Plan (Mar. 8, 2002); Special Master's Order of March 8, 2002 (extending time for "Defendants to submit the Advocacy Plan"); Special Master's Order of March 26, 2002 (extending time);

On August 30, 2002, Defendants provided <u>Interdisciplinary Guidelines for Use When Considering the Need for Advocacy Services</u> which they stated had been jointly reviewed by STS and OPA. Thereafter, when the master turned his attention to review of advocacy, the Special Master learned that the OPA did not consider these <u>Guidelines</u> to be finalized and that OPA believed there were obstacles at STS to its providing effective advocacy. <u>See</u> Special Master's memorandum of November 10, 2003. STS responded on December 1, 2003 with a detailed statement. OPA "generally agree[d]" with the statement but raised two issues which might affect residents' access to P&A advocates: one was "the extent to which all units/ID Teams have embraces their manager's endorsement of external advocacy as both a right and beneficial service for their clients" and the other was access to records over a guardian's objection. OPA response, December 1, 2003.

At the December 4, 2003 parties' meeting, OPA noted some continuing problems, as well as progress, and OPA and STS agreed a) to finalize their December 1 document, and b) to submit an agreement on access to records. The access to records issue was resolved as stated in OPA letter dated February 3, 2004, confirmed by Defendants during the February 10, 2004 parties' meeting.

**Compliance Review**

The Court's Ruling of July 21, 2005 requires the Special Master to "continue with the process envisioned under the Remedial Plan" and to "expeditiously proceed toward making compliance determination recommendations and, if compliance is lacking, in ensuring corrective action so that compliance will be achieved by February 1, 2006." Dkt. 1282.

By Special Master's Order of July 27, 2005 (Dkt. 1285), the master ordered that, on or before August 30, 2005, "the parties may propose to the master the names, with professional curricula vitae, of possible independent experts to review the present status of compliance with unreleased Advocacy requirements (See CR 73-74)."

4

Defendants failed to meet the August 30, 2005 deadline but, after much delay,[4]

Defendants on October 11, 2005 identified two of the experts they had nominated for the Habilitation review as possible Advocacy reviewers. These are Dr. Edward Skarnulis and Ms. Nancy Thaler.  The resumes of neither Dr. Skarnulis nor Ms. Thaler show experience in reviewing or operating specific advocacy programs. Ms. Thaler currently works for the federal government's home and community-based Medicaid waiver program and, before that, spent a decade as Pennsylvania's Deputy Commissioner for Mental Retardation, a post equivalent to that of DMR Commissioner O'Meara. Dr. Skarnulis had a similar post in the State of Texas and State of Minnesota and has general experience as an expert witness in lawsuits involving abuse or inadequate treatment of people with disabilities. He is presently named as the Habilitation reviewer in this litigation, a task which will require much undistracted attention.

Leslie Cohen has directed advocacy programs for people with disabilities and, on behalf an agency of the federal government, has reviewed advocacy programs across the

---

[4] Despite the order's specific citation of CR 73-74 (titled Advocacy), Defendants misunderstood the July 27, 2005 order to refer to the OPA/DMR agreement on abuse discipline discrepancies which relates to CR 8 and 12 (titles regarding Abuse), and did not respond with regard to CR 73 and 74, except to state that the access to records issue had been resolved. Defendants did not propose any Advocacy reviewers. Defendants' letter of August 30, 2005

During the September 15, 2005 parties' meeting, the master stated that Leslie Cohen, then director of the Arizona P&A program (and about to leave that position) was a possible reviewer. She has performed reviews of advocacy programs for the federal government. Defendants stated that Defendants would object to any reviewer associated with any P&A.

Defendants committed during the September 15, 2005 parties' meeting to provide reviewer nominees by September 22, 2005. The summary of that meeting states:

> David Ferleger requested, and Defendants agreed, that Defendants provide any suggested reviewers by Thursday, September 22, 2005. He agreed not to act on this before then.

The master reiterated that deadline in a September 28, 2005 memorandum. During the first week in October, Defendants committed to provide any nominees to me by October 7.  On October 10, the master informed Defendants that, absent nominations by October 11, he would proceed and Defendants would have waived any objection in this regard. Also on October 10, Ms. Cohen's resume was provided to the parties.

country. She has long and specific experience in this field. Her resume is attached. In the absence of any suggestions from the parties of reviewers with specific advocacy program experience, and in light of Ms. Cohen's evident qualifications, she is hereby identified by the Special Master as the appointed expert to perform the CR 73-74 review.[5] An outside expert will permit the master to make the required determinations on a full report, including (if needed) a hearing, and to resolve any factual disputes before the matter is reviewed by the Court.

Compliance with the Remedial Plan is the means for Defendants to purge their contempt. Defendants have the burden to demonstrate that they are in compliance. See February 21, 2002 Order of Reference Extension at 6, n. 6 ("Defendants need to demonstrate that they are in compliance with the Remedial Plan and that the Plan's desired outcomes for Southbury Training School residents have been achieved."); Order of March 11, 2003 (same). Ms. Cohen's task, and the master's will be facilitated by Defendants' submission of any written evidence which they believe substantiates compliance. Such material should be considered by Ms. Cohen in the course of her review. A decision on the need for a live hearing will be made as soon as possible after receipt of the any submissions and Ms. Cohen's report.

---

[5] Ms. Cohen will be provided with a Scope of Work pursuant to the Report to the Court No. 21 (Revised): Scope of Work for Consultant Review (May 24, 2001), including the identical requirements and standards for her review, with the substitution of the CR 73-74 evaluation criteria questions.

Some elements of CR 73-74 might be read to require compliance evaluation of the performance by OPA of its obligations under federal or state law, or under the advocacy agreements referenced above. Given that the Defendants in this matter are the Commissioner of DMR and the Director of STS (aside from the Governor in his official capacity), and the contempt and Remedial Plan address DMR/STS' actions, the master concludes that he will not make compliance determinations regarding OPA's activities per se. That is, Defendants will not be found in non-compliance on account of any failure by OPA alone to have acted appropriately. See Special Master's Order of October 31, 2001 (on advocacy review, the master's "role is not to superintend general issues of Connecticut's compliance with federal statutes relating to advocacy"); Special Master's Recommendation to the Court No. 36: Office of Protection and Advocacy Statute (CR 5, EC 3) ("OPS is an independent agency"), approved by Order of December 16, 2003 (deleting EC 3 from Court Requirement 5, "Office of Protection and Advocacy," for same reasons).

For the above reasons, it is hereby ORDERED:

1. Leslie Cohen is appointed to review compliance with Court Requirements 73 and 74 of the Remedial Plan and to report on her findings.[6]

2. Defendants shall submit the evidence written evidence regarding compliance by no later than November 17, 2005. The United States may respond with similar material within ten days thereafter. Such evidence shall be provided as follows: two copies to the Special Master and one copy to Ms. Cohen.

3. The parties will be permitted the opportunity to submit rebuttal evidence to findings or recommendations by the independent expert.

4. If compliance can be determined without a live hearing, the parties' submissions will be included in the record.

5. Any discovery requests shall be submitted in advance to the Special Master for review and approval.

SO ORDERED.

David Ferleger
Special Master

October 13, 2005

---

[6] Her compensation will be set at $950 per day plus expenses.

7

# SUMMIT**SOLUTIONS**

FICE OF THE SPECIAL MASTE
Doc. **Date:**                    **File Loc:**
**Topic**
**Topic 2:**
**Topic 3:**
Title:
ath:
ip:

October 10, 2005

TO:             The Parties

FROM:           David Ferleger

SUBJECT:        Advocacy Review

Enclosed is Leslie Cohen's resume.

Thank you for your consideration.

Cc: Tom York
Linda Keyser
James Welsh
Kathleen Egan
Fritz Gorst
Margaret Kailukaitis

**LESLIE J. COHEN**
**3952 East Cooper**
**Tucson, Arizona 85711**
lesjan@cox.net
**(520) 327-9547 (w)**
**(520) 323-7067 (h)**

EXPERIENCE IN REVIEWING ADVOCACY PROGRAMS SERVING
INDIVIDUALS WITH DISABILITIES:

Legal and Management Reviewer for United States Department of
Health and Human Services to monitor compliance of protection and
advocacy programs with federal law and to provide technical
assistance on best practices in advocacy. Review activities include
on site case file review; interviews with staff, clients and key
community contacts; review of agency policies and procedures; visits
to facilities; as well as drafting reports on findings. Reviews have
included:

Advocacy Center, New Orleans, Louisiana (March 2003)

Disability Rights Center, Augusta, Maine (May 2004)

University Legal Services, District of Columbia (June 2005)

Community Legal Aid Society Inc., Wilmington, Delaware (June 2005)

Hawaii Disability Rights Center, Honolulu, Hawaii (September 2005)

 SUMMIT**SOLUTIONS**

ΓICE OF THE SPECIAL MASTE:
Doc. Date:                     File Loc:
Topic
Topic 2:
Topic 3:
Title:
 uth:
  ip.

October 10, 2005

TO:            The Parties

FROM:          David Ferleger

SUBJECT:       Advocacy Review

Enclosed is Leslie Cohen's resume.

Thank you for your consideration.


Cc: Tom York
Linda Keyser
James Welsh
Kathleen Egan
Fritz Gorst
Margaret Kailukaitis

**LESLIE J. COHEN**
3952 East Cooper
Tucson, Arizona 85711
lesjan@cox.net
(520) 327-9547 (w)
(520) 323-7067 (h)

EXPERIENCE IN REVIEWING ADVOCACY PROGRAMS SERVING INDIVIDUALS WITH DISABILITIES:

Legal and Management Reviewer for United States Department of Health and Human Services to monitor compliance of protection and advocacy programs with federal law and to provide technical assistance on best practices in advocacy.  Review activities include on site case file review; interviews with staff, clients and key community contacts;  review of agency policies and procedures; visits to facilities; as well as drafting reports on findings.  Reviews have included:

Advocacy Center, New Orleans, Louisiana (March 2003)

Disability Rights Center, Augusta, Maine (May 2004)

University Legal Services, District of Columbia (June 2005)

Community Legal Aid Society Inc., Wilmington, Delaware (June 2005)

Hawaii Disability Rights Center, Honolulu, Hawaii (September 2005)